PERSELL v WERTZ

Docket No. 288858. Submitted March 9, 2010, at Lansing. Decided
March 23, 2010, at 9:00 a.m.

David and Kaye Persell brought an action in the Eaton Circuit Court,
Thomas S. Eveland, J., against Dennis Wertz, alleging common-
law and statutory trespass, for allegedly spraying an unknown
herbicide on plaintiffs' lawn, statutory trespass and nuisance, for
erecting a fence across a pond along the boundary line of the
parties' adjoining properties, defamation, and intentional inflic-
tion of emotional distress. The jury held in favor of plaintiffs on all
counts except the defamation count. A judgment awarding dam-
ages, costs, case evaluation sanctions, and prejudgment interest
was entered for plaintiffs. Defendant appealed.

The Court of Appeals *held*:

1. The common law does not establish riparian rights in
artificial bodies of water like the pond made by the parties. Under
Michigan law, no riparian rights arise from an artificial body of
water. The artificial pond did not create riparian lands with
riparian rights. The trial court erred by determining that plaintiffs
could establish that they had riparian rights to use the entire
surface of the artificial pond. The trial court erred in submitting
the counts regarding the erection of the fence to the jury. The
judgment with regard to those counts must be reversed. It is
impossible to determine the extent to which the erection of the
fence may have improperly influenced the jury's determination
that defendant inflicted emotional distress or its assessment of
damages therefor. That part of the judgment must also be reversed
and the case must be remanded for a new trial on the emotional
distress count at which plaintiffs' proofs may not include reference
to the fence across the pond.

2. Testimony by David Persell created a factual dispute regard-
ing the spraying of herbicide that was properly submitted for the
jury to resolve. The judgment must be affirmed with regard to the
common-law trespass claim relating to the herbicide spraying.

3. MCL 600.2919(1)(c), which provides in part that a person
who intentionally cuts down or carries away any grass, hay, or
grain from another's land is liable for treble damages, does not

include any requirement that the item cut down or carried away be of agricultural value. The statute also does not cover the alleged poisoning or damaging of grass. The count of plaintiffs' complaint seeking treble damages under the statute for the alleged placement of herbicide on plaintiffs' grass should have been dismissed and the part of the judgment based on that count must be reversed.

4. The award of case evaluation sanctions must be vacated.

Affirmed in part, reversed in part, vacated in part, and remanded for further proceedings.

1. WATER AND WATERCOURSES — RIPARIAN RIGHTS — ARTIFICIAL WATERCOURSES.

No riparian rights arise from an artificial body of water under Michigan law; land abutting on an artificial watercourse has no riparian rights; artificial watercourses are waterways that owe their origin to acts of men.

2. TRESPASS — TREBLE DAMAGES — CUTTING DOWN OR CARRYING AWAY GRASS, HAY, OR GRAIN.

The statute that provides, in part, that a person who intentionally cuts down or carries away any grass, hay, or grain from another's land is liable for treble damages does not require that the item that is cut down or carried away be of agricultural value; the alleged poisoning or damaging of grass is not included within the coverage of the statute (MCL 600.2919[1][c]).

*Willingham & Coté, P.C.* (by *Curtis R. Hadley*), for plaintiffs.

*Bodwin & Stover, P.C.* (by *Randolph L. Bodwin*), for defendant.

Before: OWENS, P.J., and SAWYER and O'CONNELL, JJ.

SAWYER, J. Defendant appeals a judgment of the circuit court entered on a jury verdict in favor of plaintiffs. We affirm in part, reverse in part, vacate the case evaluation sanctions, and remand for further proceedings.

Plaintiffs and defendant are neighbors in Charlotte. They originally had a very amicable relationship. In-

deed, that relationship gave rise to an event that ultimately forms part of the instant dispute. Defendant had hired an excavator to dig a pond toward the rear of his property. Plaintiffs apparently found the idea appealing and it was agreed that the excavation would extend across the common property line. As a result, an artificial pond was created, with approximately three-quarters of the pond on defendant's property and the remainder on plaintiffs' property.

But that relationship seems to have deteriorated in recent years and a number of disputes have given rise to the instant litigation, with plaintiffs having filed a six-count complaint against defendant. The first two counts of the complaint alleged common-law and statutory trespass over an incident in June 2006 in which plaintiffs claim that defendant entered upon their property and sprayed an unknown herbicide, resulting in the killing of a large portion of their lawn. The third and fourth counts of the complaint allege statutory trespass and nuisance arising from defendant's, in August 2006, erecting a two-strand wire fence across the pond along the boundary line of the adjoining properties. Count V of the complaint alleged defamation based upon several statements defendant made to third parties regarding plaintiff David Persell. Count VI alleged intentional infliction of emotional distress based upon defendant's conduct regarding the preceding counts. At trial, the jury found in favor of plaintiffs on all counts except for defamation. The herbicide counts resulted in a judgment of $3,000, while the pond fence allegations resulted in a judgment of $2,200. The emotional distress claim resulted in a judgment of $15,000. With the addition of costs, case evaluation sanctions, and prejudgment interest, the total judgment was in the amount of $42,937.76.

Defendant first argues that the trial court erred by failing to dismiss counts III and IV regarding the fencing of the pond. We review this question de novo[1] and agree with defendant that these counts should have been dismissed. Plaintiffs' right to recover under these counts is dependent upon the conclusion that plaintiffs possess riparian rights in the pond giving them the right to use the entire surface of the pond. Unlike the trial court, we believe that it is clear under Michigan law that no riparian rights arise from an artificial body of water. In reaching this decision, we rely on the Supreme Court's decision in *Thompson v Enz.*[2]

*Thompson* involved the development of a parcel of land that abutted Gun Lake. The development provided for 144 lots, approximately 16 of which actually abutted the natural shoreline of Gun Lake. The remaining lots would front on canals that would give access to the lake.[3] In determining whether these back lots had riparian rights, the Supreme Court made it clear that artificial waterways do not give rise to riparian rights. First, the Court observed the following principles:[4]

> "Riparian land" is defined as a parcel of land which includes therein a part of or is bounded by a natural water course. 4 Restatement, Torts, § 843, p 326. See, also, *Palmer v. Dodd*, 64 Mich 474, 476 [31 NW 209 (1887)]; *Stark v. Miller*, 113 Mich 465 [71 NW 876 (1897)]; *Monroe Carp Pond Co. v. River Raisin Paper Co.*, 240 Mich 279, 287 [215 NW 325 (1927)].
>
> A "riparian proprietor" is a person who is in possession of riparian lands or who owns an estate therein. 4 Restatement, Torts, § 844, p 331.

---

[1] *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003).

[2] 379 Mich 667; 154 NW2d 473 (1967).

[3] *Id.* at 675.

[4] *Id.* at 677.

See also *Little v Kin*,[5] which adopted *Thompson*'s definition of "riparian land" being land bounded by a natural watercourse.

While the above alone would make it clear that an artificial pond does not create riparian lands with riparian rights, the Court went on to make the point even clearer:[6]

> Artificial water courses are waterways that owe their origin to acts of man, such as canals, drainage and irrigation ditches, aqueducts, flumes, and the like. 4 Restatement, Torts, § 841, subd h, p 321.
>
> Land abutting on an artificial water course has no riparian rights.

The trial court's error in the case at bar is its reliance on an unpublished decision of this Court in *Parsons v Whittaker*,[7] which incorrectly distinguished *Thompson*. That case considered riparian rights arising from an artificial lake created when a gravel pit filled with water. The Court[8] acknowledged that there were no published decisions of a Michigan court regarding whether riparian rights arose in an artificial lake. Indeed, it acknowledged that the common-law rule was that land abutting an artificial watercourse had no riparian rights, citing *Thompson* for that proposition. But *Parsons* then distinguished *Thompson* on the basis that it considered the rights where the artificial watercourse connects to a natural body of water.[9] Ultimately, *Parsons* concluded that the common law did not preclude a determination that artificial bodies of water give

---

[5] 249 Mich App 502, 508; 644 NW2d 375 (2002).

[6] *Thompson*, 379 Mich at 679.

[7] *Parsons v Whittaker*, unpublished opinion per curiam, issued August 23, 1996 (Docket Nos. 170274 and 171456).

[8] *Id.* at 2.

[9] *Id.* at 3.

rise to riparian rights and that, in any event, the Inland Lakes and Streams Act[10] created riparian rights to an artificial lake at least five acres in size.

While *Thompson* did deal with an artificial waterway that connected to a natural lake, there is nothing in the opinion to suggest that the Court was relying on any such distinction. Rather, it seems clear to us that *Thompson* relied on the very broad principle that the common law does not establish riparian rights in artificial bodies of water. Furthermore, we need not determine whether *Parsons* correctly determined that there are statutory riparian rights because, even if *Parsons* is correct on this point, it does not apply to the case at bar because the pond at issue is smaller than five acres in size.

For these reasons, we conclude that the trial court erred by its reliance on *Parsons* and by concluding that plaintiffs could establish that they had riparian rights to use the entire surface of the artificial pond. Because plaintiffs could not establish riparian rights with respect to the artificial pond, the trial court erred by submitting counts III and IV to a jury. Furthermore, we also agree with defendant that this conclusion compels a reversal of the jury verdict on count VI, the claim for intentional infliction of emotional distress. While it is true that the emotional distress claim was based not just on the construction of the fence across the pond and the jury could have found for plaintiffs on this count without regard to the fence across the pond, it is equally true that it is impossible to determine the extent to which the fence may have improperly influenced the jury's determination that defendant inflicted emotional distress or its assessment of damages. Accordingly, while our decision on counts III and IV does

---

[10] Former MCL 281.951 *et seq.*

not compel a judgment for defendant on count VI, it does invalidate the jury's verdict on that count and necessitates a new trial on count VI.

Defendant's remaining argument on appeal is that the trial court erred by denying summary disposition as to counts I and II regarding the herbiciding of plaintiffs' lawn. We disagree. With respect to count I, the common-law trespass claim involving the spraying of herbicide on plaintiffs' lawn, it is true that plaintiffs do not point to any direct evidence establishing that defendant did so on the one occasion alleged in the complaint. But, plaintiff David Persell did testify that he observed defendant spraying herbicide on plaintiffs' side of the pond on a different occasion and that he observed defendant spraying a herbicide on defendant's property about the time in question and that the resulting effect appeared similar to what plaintiffs thereafter observed on their own lawn. We conclude that this did create a factual dispute for the jury to resolve, which it resolved in plaintiffs' favor.[11]

But we do agree with defendant that count II, seeking treble damages under MCL 600.2919(1)(c) should have been dismissed because that statute is inapplicable to this case. Like summary disposition, questions of statutory interpretation are reviewed de novo.[12] The goal of statutory interpretation is to give effect to the legislative intent.[13] In doing so, we examine the language of the statute and where the intent is clearly expressed in the statute, no further construction is necessary.[14]

MCL 600.2919(1) provides that a person who inten-

---

[11] *Dressel v Ameribank*, 468 Mich 557; 664 NWd 151 (2003).

[12] *Id.*

[13] *Id.* at 562.

[14] *Id.*

tionally does one of the following on the land of another
is liable for treble damages:

> (a) cuts down or carries off any wood, underwood, trees,
> or timber or despoils or injures any trees on other's lands,
> or
>
> (b) digs up or carries away stone, ore, gravel, clay, sand,
> turf, or mould or any root, fruit, or plant from another's
> lands, or
>
> (c) cuts down or carries away any grass, hay, or any kind
> of grain from another's lands . . . .

Defendant essentially argues that the statute only ap-
plies to items of agricultural value. Plaintiffs counter
that a strict reading of the statute does not include any
requirement that the item cut down or carried away
must be of agricultural value.

Plaintiffs are correct in that nothing in the statute
limits the applicability of the statute to crops or other
valuable resources. But for the same reason, a proper
interpretation of the statute necessitates that plaintiffs
lose because nothing in the statute covers the poisoning
of the grass. That is, by its very terms, § (1)(c) only
applies to grass that a person "cuts down or carries
away" and it is not alleged that defendant did either. In
other words, just as defendant may not read into the
statute a requirement that the grass, hay, or grain be a
crop or otherwise a valuable resource, plaintiffs may not
read into the statute that it covers poisoning the grass
in addition to cutting it down or carrying it away. While,
as plaintiffs suggest, the grass may have "essentially
been cut down," it was not actually cut down and,
therefore, the statute is inapplicable.

Moreover, this is not a mere parsing of words. Section
(1)(a) clearly reflects that the Legislature could have
included coverage of damage to the grass. That section,
in dealing with trees, in addition to providing for

coverage for cutting down or carrying off trees, also specifically provides for coverage for despoiling or injuring a tree. This clearly reflects that the Legislature did not include within the concept of cutting vegetation down other injuries to vegetation and that, had the Legislature wanted to include injuries to grass in addition to cutting it down, it would have included language similar to that which it employed in reference to trees.[15]

In sum, we agree that the trial court should have dismissed counts II, III, and IV and not submitted these counts to the jury. But we do conclude that the verdict on count I should stand and we affirm the award of $750 on this count. As for count VI, while it is possible that plaintiffs could still prevail on this claim, it cannot be based upon the allegations of trespass with regard to the placing of the fence across the pond along the property line because defendant had a right to do this. Accordingly, we conclude that defendant is entitled to a new trial on count VI only, with plaintiffs' proofs not to include reference to the fence across the pond.

Affirmed in part, reversed in part, vacated with respect to the case evaluation sanctions, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs, neither party having prevailed in full.

---

[15] See *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993) ("Courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there.").