### HOLTON v WARD

Docket No. 308454. Submitted January 9, 2014, at Detroit. Decided January 23, 2014, at 9:00 a.m. Leave to appeal sought.

James and Nancy Holton brought an action in the Oakland Circuit Court against Carole Ward, seeking declaratory and injunctive relief. Plaintiffs and defendant owned adjacent parcels of land that were once owned, and subsequently were divided and sold, by a common owner. The common owner had dredged part of a wetland on the property and had built an earthen dam that allowed surface water to collect in the wetland, forming a large pond. Plaintiffs claimed a right to use that portion of the pond on defendant's property. Defendant moved for summary disposition, asserting that plaintiffs' action was barred by collateral estoppel and res judicata because the Department of Environmental Quality (DEQ) had previously ruled in a contested case hearing that plaintiffs did not have riparian rights in the pond. Defendant also sought sanctions against plaintiffs for bringing a frivolous lawsuit. The court, Rae Lee Chabot, J., granted summary disposition in favor of defendant, holding that collateral estoppel barred plaintiffs' action, but denied defendant's request for sanctions. Plaintiffs appealed and defendant cross-appealed.

The Court of Appeals *held*:

1. Riparian rights are special rights to make use of water in a waterway adjoining the owner's property. Riparian rights attach to land that abuts or includes a natural watercourse—i.e., a natural stream of water fed from permanent or periodical sources and usually flowing in a particular direction in a defined channel, having a bed and banks or sides, and usually discharging into some other stream or body of water. Riparian rights do not attach to land that abuts an artificial watercourse—i.e., waterways that owe their origin to acts of man. The pond in which plaintiffs claimed riparian rights was an artificial body of water. The original wetland dredged and dammed by the common owner served as a mere collection point for surface waters. Because the original wetland was not a natural watercourse, plaintiffs possessed no riparian rights in the artificial pond created by the common owner's actions.

2. MCL 324.30101(r) defines the term "riparian owner" as a person who has riparian rights, and MCL 324.30101(s) defines the term "riparian rights" as those rights that are associated with the ownership of the bank or shore of an inland lake or stream. These definitional sections in Part 301 of the Natural Resources and Environmental Protection Act, MCL 324.30101 *et seq.*, do not grant riparian rights to new groups of property holders or enlarge the common-law understanding of riparian rights, but simply define those terms as they are generally understood.

3. For collateral estoppel to apply, three elements must be satisfied: (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment, (2) the same parties must have had a full and fair opportunity to litigate the issue, and (3) there must be mutuality of estoppel. Collateral estoppel applies to administrative proceedings if the determination was adjudicatory in nature, allowed for an appeal, and the Legislature intended that the decision would be final if no appeal was taken. In this case, defendant's predecessor in interest, Sharon Bone, was a party to the earlier action before the DEQ, and defendant would have been bound by a decision against Bone in that action. Both Bone and James, who participated in the DEQ action, had a full and fair opportunity to litigate the issue of plaintiffs' alleged riparian rights in the DEQ action. The question whether James possessed any water rights in the pond was an essential part of the DEQ action, and the DEQ decided the matter, holding that he did not have any riparian rights in the pond. The DEQ action was adjudicatory in nature, allowed for an appeal, and the Legislature intended that the decision would be final if no appeal was taken. Accordingly, the trial court correctly concluded that this case was barred by collateral estoppel and properly granted summary disposition in favor of defendant.

4. A party pleading a frivolous claim is subject to costs as provided in MCR 2.625(A)(2). Under MCR 2.625(A)(2), if the court finds an action or defense frivolous, costs shall be awarded as provided by MCL 600.2591. MCL 600.2591(1) mandates that if a claim or defense is frivolous, the court shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney. An action is frivolous if (1) the party's primary purpose in initiating the action was to harass, embarrass, or injure the prevailing party, (2) the party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true, or (3) the party's legal position was

devoid of arguable legal merit. In this case, the law is well
established that riparian rights do not attach to artificial bodies of
water, plaintiffs knew the waterway in question was artificial, and
the DEQ had previously held that James had no riparian rights in
the water in question. Therefore, plaintiffs' position was devoid of
arguable legal merit, and the filing of this action was an effort to
harass defendant. The action was frivolous, and defendant was
entitled to attorney fees and costs.

Summary disposition in favor of defendant affirmed; denial of
sanctions against plaintiffs reversed. Remanded to the trial court
for imposition of sanctions against plaintiffs in an appropriate
amount.            .

UAW-GM Legal Services Plan (by *Carol Nosanchuk
Birnkrant* and *Frederick L. Miller*) for plaintiffs.

*Butzel Long PC* (by *Patrick Karbowski* and *Susan
Lynn Johnson*) and *The Smith Appellate Law Firm* (by
*Michael F. Smith*) for defendant.

Before: SAAD, P.J., and CAVANAGH and K. F. KELLY, JJ.

SAAD, P.J. In this alleged riparian rights case, plain-
tiffs, James and Nancy Holton, appeal the trial court's
grant of summary disposition to defendant, Carole
Ward. Defendant cross-appeals because the trial court
declined to hold that plaintiffs' lawsuit was frivolous
and, therefore, denied defendant's motion for sanctions.
Because plaintiffs have no riparian rights to the man-
made body of water at issue, we affirm the trial court's
grant of summary disposition. And because plaintiffs'
suit is frivolous, we reverse the trial court's refusal to
grant sanctions.

### I. NATURE OF THE CASE

Plaintiffs and defendant own adjacent land parcels
once owned, and subsequently divided and sold by, a
common owner. To prevent his cattle from walking

through a muddy wetland, the common owner dredged part of the wetland and built an earthen dam, which allowed surface water to collect in the wetland. His actions created a very large pond, which is now split between plaintiffs' and defendant's properties.

Plaintiffs claim the right to use that portion of the pond on defendant's property under the theory of riparian rights,[1] despite the fact that (1) the pond is artificial and man-made, and (2) their parcel does not abut a natural watercourse, but merely this artificial pond.

Michigan law is clear that riparian rights adhere to land that abuts a natural watercourse, and not, as here, to artificial or man-made bodies of water. Yet despite this well-established Michigan precedent and an earlier ruling by the Michigan Department of Environmental Quality (DEQ) that rejected a similar riparian rights claim brought by Mr. Holton to gain access to defendant's property, plaintiffs once again seek to establish riparian rights to gain access to property which is rightfully defendant's.

We hold that plaintiffs have no riparian rights to gain access to that portion of the pond that forms part of defendant's property. We accordingly affirm the part of the trial court's ruling that reflects this black-letter law. Moreover, because, in an earlier decision, the DEQ ruled that Mr. Holton had no riparian rights to access and disturb defendant's peaceful enjoyment of her property rights, we hold that collateral estoppel also

---

[1] As defendant correctly notes, the land at issue in this case is properly termed "littoral"—i.e., land that abuts or includes a lake. "Riparian" lands abut or include a river. Michigan courts, however, have used the term "riparian" to encompass both types of property, and we follow that approach throughout this opinion. See *2000 Baum Family Trust v Babel,* 488 Mich 136, 138 n 1; 793 NW2d 633 (2010).

bars plaintiffs' claim. In light of the DEQ ruling and well-established Michigan precedent, plaintiffs and their counsel knew or should have known that this claim was frivolous and vexatious, and therefore the trial court should have granted appropriate sanctions. Because it failed to do so, we remand for a determination of appropriate sanctions.

We so hold not only because of the obvious frivolity of plaintiffs' case. A landowner should not have to confront the Hobson's choice of either repeated expensive litigation to reestablish the right of peaceful enjoyment of her property, or the abandonment of these historically cherished and valued property rights.

## II. FACTS AND PROCEDURAL HISTORY

The parties own adjacent land parcels, which they obtained from a common owner. In the 1950s, the common owner sought to drain part of a wetland on his property, and did so by dredging a portion of the wetland and constructing an earthen dam.[2] This new infrastructure captured surface water created by rain and melted snow. In the process, it transformed what had been a muddy wetland into a very large pond.

The wetland-pond covers approximately 20 acres. When the common owner divided his lot into two parcels, the wetland-pond was also split in two, with part on plaintiffs' property and part on defendant's. This area of plaintiffs' and defendant's properties has been the subject of two prior lawsuits, both brought by Mr. Holton: (1) a 2003 action before the Oakland County Circuit Court to force defendant's predecessor

---

[2] For a detailed discussion of the relevant facts see *Holton v Bone*, unpublished opinion per curiam of the Court of Appeals, issued December 27, 2007 (Docket No. 272113), pp 1-2.

in interest to remove a culvert that lowered the water level of the wetland-pond area (which Mr. Holton won),[3] and (2) a 2004 suit before the DEQ to prevent defendant's predecessor in interest from, among other things, maintaining a fence in the wetland area that prevented Mr. Holton from trespassing on the portion of the wetland-pond on defendant's property (which Mr. Holton lost). In the latter action, Mr. Holton claimed that the fence would violate his "water rights" in the wetland-pond—an argument that the DEQ rejected.[4]

Undeterred by this legal setback, plaintiffs launched this lawsuit in 2011 in the Oakland Circuit Court, in yet another effort to gain access to the portion of the wetland-pond on defendant's property (currently barred by defendant's fence), and claimed that defendant's denial of access violates plaintiffs' riparian rights. Defendant sought summary disposition under MCR 2.116(C)(7) and 2.116(C)(8), and in support asserted that plaintiffs' complaint is barred by collateral estoppel and res judicata because the DEQ ruled that plaintiffs have no riparian rights in this body of water. She also sought sanctions against plaintiffs for bringing a frivolous lawsuit because (1) plaintiffs knew when they brought this suit that well-established Michigan law holds that plaintiffs have no riparian rights to a man-made body of water, and (2) that the DEQ so ruled in Mr. Holton's earlier litigation.

The trial court correctly rejected plaintiffs' claims and granted defendant's motion for summary disposition. It held that collateral estoppel barred plaintiffs' action because the 2006 DEQ ruling stressed that

---

[3] Our Court affirmed the trial court's judgment. *Holton*, unpub op at 5.

[4] The DEQ issued a final determination and order on this suit in October 2006. Mr. Holton appealed an unrelated portion of the DEQ suit to the Oakland Circuit Court, which denied the appeal.

defendant had no riparian rights in the large wetland-pond, because the wetland-pond was an artificial—i.e., man-made—waterway. The trial court, however, denied defendant's request for sanctions, holding that the riparian-rights issue was "arguable."

Plaintiffs appeal and argue that the trial court erred when it granted defendant's motion for summary disposition. They claim that they possess riparian rights in the wetland-pond, and that their suit should not have been collaterally estopped on the basis that they lack riparian rights. Plaintiffs also raise a new argument on appeal, asserting that Part 301 of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.30101 *et seq.*, which concerns inland lakes and streams, provides them with a statutory basis for riparian rights in the wetland-pond. Defendant cross-appeals, and reasserts (1) that res judicata (as well as collateral estoppel) bars plaintiffs' claims, and (2) the trial court erred when it denied her request for sanctions against plaintiffs.

### III. ANALYSIS

We review de novo a trial court's decision on a motion for summary disposition, *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008), and under MCR 2.116(C)(7) we aim to determine whether the moving party was entitled to judgment as a matter of law, *Stoudemire v Stoudemire*, 248 Mich App 325, 332; 639 NW2d 274 (2001).

A motion for summary disposition pursuant to MCR 2.116(C)(8) tests the legal sufficiency of a plaintiff's claim based on the pleadings alone to determine whether the plaintiff has set forth a claim on which relief may be granted. *Maple Grove Twp v*

*Misteguay Creek Intercounty Drain Bd*, 298 Mich App
200, 206; 828 NW2d 459 (2012). "Summary disposi-
tion under subrule (C)(8) is appropriate if no factual
development could justify the plaintiff's claim for
relief." *Id.* (quotation marks and citation omitted).

### A. RIPARIAN RIGHTS

Claims of riparian rights are common-law claims and
they are, accordingly, reviewed de novo by our Court.
*Mich Citizens for Water Conservation v Nestlé Waters
North America Inc*, 269 Mich App 25, 53; 709 NW2d 174
(2005) (opinion by SMOLENSKI, J.), aff'd in part and rev'd
in part on other grounds 479 Mich 280 (2007). " '[R]i-
parian rights' are special rights to make use of water in
a waterway adjoining the owner's property." *Dyball v
Lennox*, 260 Mich App 698, 705; 680 NW2d 522 (2004)
(citations and quotation marks omitted). Among other
privileges, these rights include: the right to make natu-
ral and artificial use of the water in the watercourse;[5]
the right to construct and maintain a dock;[6] and the
right to use the entire surface of the watercourse for

---

[5] See *Thompson v Enz*, 379 Mich 667, 686; 154 NW2d 473 (1967)
(opinion by T. M. KAVANAGH, J.) (noting that there are two classes of
riparian uses: natural and artificial, defining natural uses as those
that "encompass all those absolutely necessary for the existence of the
riparian proprietor and his family, such as to quench thirst and for
household purposes," and defining artificial uses as those that "merely
increase one's comfort and prosperity and do not rank as essential to
his existence, such as commercial profit and recreation"). Both
natural and artificial use of water is limited by the doctrine of
"reasonable use," which mandates that riparian owners on the same
watercourse have an equal right to use of the water. For a recent
explanation of Michigan reasonable-use doctrine, see *Nestlé*, 269 Mich
App at 55-58 (opinion by SMOLENSKI, J.).

[6] *McCardel v Smolen*, 404 Mich 89, 94; 273 NW2d 3 (1978) ("Erecting
or maintaining docks or boat hoists near the water's edge is a riparian or
littoral right . . . .").

recreational purposes.[7] Such rights are distinct from other state-law water-related legal privileges, such as the public right of recreational access, which allows for qualified public use of waterways that are navigable under Michigan law.[8]

Michigan has a straightforward rule governing riparian rights: riparian rights attach to land that abuts or includes a natural watercourse—i.e., a "natural stream of water fed from permanent or periodical natural sources and usually flowing in a particular direction in a defined channel, having a bed and banks or sides, and usually discharging itself into some other stream or body of water" *Kernen v Homestead Dev Co*, 232 Mich App 503, 511 n 5; 591 NW2d 369 (1998) (citations and quotation marks omitted). Riparian rights do not attach to land that abuts an artificial watercourse—i.e., "waterways that owe their origin to acts of man, such as canals, drainage and irrigation ditches, aqueducts, flumes, and the like." *Thompson*, 379 Mich at 679 (opinion by T. M. KAVANAGH, J.), citing 4 Restatement Torts, § 841, p 321. Stated another way, "it is clear under Michigan law that no riparian rights arise from an artificial body of water." *Persell v Wertz*, 287 Mich App 576, 579; 791 NW2d 494 (2010).

As Justice KAVANAGH noted in *Thompson*, this rule is

---

[7] *Rice v Naimish*, 8 Mich App 698, 703; 155 NW2d 370 (1967) ("Among the rights of a littoral owner is the right to use his upland property to gain access to the lake waters; the right to put out in a boat or on foot from his upland property where it touches the lake waters; the right, after so embarking, to go boating, swimming, water skiing, fishing, ice skating or sledding or to engage in other aquatic sports, in or upon the lake waters; and the right to use the entire surface and sub-surface lake waters for such purposes.").

[8] See *Bott v Natural Resources Comm*, 415 Mich 45, 60-65; 327 NW2d 838 (1982).

followed by many of our sister states,[9] and ultimately has its origins in the most ancient property right: the right to exclude. See *Ruggles v Dandison*, 284 Mich 338, 340-341; 279 NW 851 (1938) (holding that the plaintiff had no riparian rights in a natural lake when the plaintiff's access to the lake was provided by a man-made channel, and that the defendant was entitled to exclude the plaintiff from the lake by installing a fence). More recent cases have focused on the economic advantages of limiting riparian rights to natural waters.[10] In its discussion of the principle, the Illinois Supreme Court[11] explained:

> The commonsense rationale underlying [the artificial-waters rule] is that, unlike a natural body of water, which exists because of natural processes, an artificial body of water is the result of someone's labor. An artificial body of water is not a natural resource to be shared by all. Consequently, as a general rule, it would be inequitable to grant a property owner rights to an artificial body of water

---

[9] Specifically, Justice KAVANAGH's lead opinion in *Thompson* cites cases from Wisconsin, Texas, Virginia, and Nebraska. *Thompson*, 379 Mich at 679-681. For a more recent listing of decisions adopting the artificial waters rule, see *Anderson v Bell*, 433 So2d 1202, 1204-1205 (Fla, 1983) (restating the rule and citing supporting cases from Arizona, Connecticut, and New Jersey). *Anderson* also cites *Thompson* with approval. *Id.* at 1204.

[10] See, for example, *Anderson*, 433 So2d at 1205 ("Because the construction of a man-made water body often involves the expenditure of substantial sums of money and the expense is not, as a rule, divided proportionately among the various abutting owners, the individual making the expenditure is justified in expecting that superior privileges will inure to him in return for his investment."), and *White's Mill Colony, Inc v Williams*, 363 SC 117, 134; 609 SE2d 811 (SC App, 2005) (citing *Anderson*'s rationale with approval and noting that "[p]roperty owners should be able to make improvements to their real property without fear that their investment will be diminished should they create a body of water that touches upon the property line of a neighboring landowner").

[11] Cases from foreign jurisdictions are not binding, but can be persuasive. *People v Campbell*, 289 Mich App 533, 535; 798 NW2d 514 (2010).

that has been created by someone else solely because the property abuts the water. [*Alderson v Fatlan*, 231 Ill 2d 311, 320-321; 325 Ill Dec 548; 898 NE2d 595 (2008).[12]]

It is undisputed that the wetland-pond in which plaintiffs claim riparian rights is an artificial body of water. The pond and deeper wetland were created in the 1950s by the common owner's earthen damming and dredging of a muddy wetland, which caused surface waters to collect in the deeper wetland, and created a pond. Accordingly, the wetland-pond area created by the dam is artificial, and plaintiffs possess no riparian rights in it. Plaintiffs have made no allegations that the common owner dammed a natural watercourse, nor is there any evidence to suggest that he did. In fact, it appears that the original wetland dredged and dammed by the common owner merely served as a collection point for surface waters—i.e., " 'waters on the surface of the ground, usually created by rain or snow, which are of a casual or vagrant character, following no definite course and having no substantial or permanent existence.' Such waters are lost by percolation, evaporation, or by reaching some definite watercourse or substantial body of water into which they flow." *Kernen*, 232 Mich App at 511 n 7, quoting *Fenmode, Inc v Aetna Cas & Surety Co*, 303 Mich 188, 192; 6 NW2d 479 (1942). Surface waters do not give rise to riparian rights: said rights only attach to land that abuts a natural watercourse. See *Gregory v Bush*, 64 Mich 37, 41; 31 NW 90 (1887) (noting that "outlet[s] for surface

---

[12] After its explanation of the artificial-waters rule, *Alderson* lists cases in which Illinois courts have found exceptions to the rule—i.e., cases in which the parties *did* possess riparian rights in artificial bodies of water. *Alderson*, 231 Ill 2d at 321-323. None of these exceptions is relevant to our case, however, because, as noted, Michigan law has a bright-line rule: riparian rights do not arise from artificial watercourses. See *Persell*, 287 Mich App at 579; *Thompson*, 379 Mich at 679.

water" that have "no defined bed or channel, with banks and sides" and "no permanent source of supply" are not "governed by the well-settled rules applying to natural streams"). If the original wetland modified by the common owner was not a "natural watercourse," it is impossible for plaintiffs to have any riparian rights in the (artificial) pond and deeper wetland created by the common owner's actions. Plaintiffs cite no caselaw to the contrary, and their attempts to distinguish their situation are unavailing.[13]

Perhaps in tacit admission that they have no viable common-law riparian-rights claim, plaintiffs, for the first time in this appeal, turn to a statute for a remedy. They assert that the definitional section of Part 301 of NREPA[14] abrogates the common law and creates riparian rights for all owners of property that abut watercourses larger than five acres. Because this argument was not raised by plaintiffs below or decided by the trial court, plaintiffs waived this argument and it is not preserved for appeal. *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005). We accordingly need not address it, as "[i]ssues raised for the first time on appeal are not ordinarily subject to review." *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993).

---

[13] Plaintiffs also assert that the trial court never should have decided the issue of riparian rights, because defendant supposedly raised the issue for the first time in her reply brief. This assertion is belied by the record. The first page of plaintiffs' complaint states that this is an action to "claim access rights, as riparian owners, to the entirety of a body of water that is on their property and the property of Defendant." In addition, plaintiffs were well aware of the artificial waterway issue—as noted, our Court recognized the wetland-pond as artificial four years before plaintiffs launched this lawsuit. *Holton,* unpub op at 1. They cannot claim surprise now that defendant has raised that same issue yet again.

[14] Specifically MCL 324.30101(i) and (s).

In any event, plaintiffs' argument under Part 301 lacks merit.[15] By its plain meaning, the statute does not grant or enlarge riparian rights—it simply defines those terms as generally understood. See MCL 324.30101(r) (" '[r]iparian owner' means a person who *has* riparian rights") (emphasis added); MCL 324.30101(s) (" '[r]iparian rights' means those rights which are associated with the ownership of the bank or shore of inland lake or stream"). The use of "has" indicates that MCL 324.30101(r) refers to landowners who already possess riparian rights—it does not extend riparian rights to new groups of property holders. In addition, the statute nowhere mentions that it abrogates the common law, nor does it evince intent to do so. See *Hamed v Wayne Co*, 490 Mich 1, 22 n 57; 803 NW2d 237 (2011) ("The Legislature is presumed to know the common law, and any abrogation of the common law must be explicit."). See also *Stidham v Algonquin Lake Community Ass'n*, 133 Mich App 94, 98; 348 NW2d 46 (1984) (holding that "[t]he existence of the Inland Lakes and Streams Act

---

[15] In support of their claim, plaintiffs cite an unpublished opinion of this Court, *Parsons v Whittaker*, which held that the Inland Lakes and Streams Act (ILSA), former MCL 281.951 *et seq.*, which has been recodified as Part 301 of NREPA, did create riparian rights in landowners whose parcels abut waterways (natural and artificial) that are over five acres in size. *Parsons v Whittaker*, unpublished opinion per curiam of the Court of Appeals, issued August 23, 1996 (Docket No. 170274). Unpublished opinions are not binding, but may be considered persuasive. *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010).

As discussed *infra*, we are not persuaded by *Parsons'* interpretation of the ILSA, and believe that the case was wrongly decided. We further note that the *Parsons* court was divided—Judge WHITE wrote a dissent that reached the same conclusions that we reach. See *Parsons*, unpub op at pp 1-3 (WHITE, P.J., dissenting in part). And no subsequent decision has cited *Parsons*, except for *Persell*—which does so negatively. See *Persell*, 287 Mich App at 580-581 (disagreeing with *Parsons'* interpretation of the ILSA).

[subsequently recodified as Part 301 of NREPA] does not preclude plaintiff's common-law remedies").

We therefore affirm the trial court's grant of summary disposition in favor of defendant under MCR 2.116(C)(8) on the basis of plaintiffs' lack of riparian rights, because no factual development could justify plaintiffs' claim for relief.

### B. COLLATERAL ESTOPPEL

"Generally, for collateral estoppel to apply three elements must be satisfied: (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full [and fair] opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v State Farm Ins Co*, 469 Mich 679, 682-684; 677 NW2d 843 (2004) (citation and quotation marks omitted) (alteration in original).[16] "[M]utuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy to a party, in the previous action. In other words, [t]he estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him." *Id*. at 684-685 (citations and quotation marks omitted) (alterations in original). The application of collateral estoppel is a question of law that is reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

Collateral estoppel applies to administrative proceedings if the determination was adjudicatory in nature, allowed for an appeal, and the Legislature intended that

---

[16] As defendant notes, *Monat* suggests that mutuality of estoppel is not always required for collateral estoppel to apply. See *Monat*, 469 Mich at 687-688. This caveat is immaterial to our case, however, as mutuality of estoppel is present here.

the decision would be final if no appeal was taken. *Dearborn Hts Sch Dist No 7 v Wayne Co MEA/NEA*, 233 Mich App 120, 129; 592 NW2d 408 (1998). An administrative agency's decision is " 'conclusive of the rights of the parties, or their privies, in all other actions or suits in the same or any other tribunal of concurrent jurisdiction on the points and matters in issue in the first proceeding.' " *Nummer v Treasury Dep't*, 448 Mich 534, 557; 533 NW2d 250 (1995) (MALLETT, J., dissenting), quoting *Lilienthal v City of Wyandotte*, 286 Mich 604, 616; 282 NW 837 (1938).

In this case, mutuality is present and each party (or their predecessor in interest) has had a full and fair opportunity to litigate the issue of plaintiffs' riparian rights. Defendant's predecessor in interest, Sharon Bone, was a party to the 2004 action before the DEQ, and defendant would have been bound by an adverse decision against Bone. See *Monat*, 469 Mich at 684-685. And both Mr. Holton and Bone had a full and fair opportunity to litigate Mr. Holton's riparian rights before the DEQ. The transcript of the DEQ hearing reveals that Mr. Holton, Bone, and defendant herself all provided extensive testimony and were cross-examined before the administrative law judge (ALJ).[17] The ALJ also heard testimony from additional witnesses and reviewed a large body of evidence.

In addition, a question of fact essential to the judgment in this case was actually litigated and determined by an earlier valid and final judgment—namely, the

[17] The DEQ proceeding itself meets the requirements for collateral estoppel to apply: the determination was adjudicatory in nature, it allowed for an appeal (which Mr. Holton made, albeit on an issue unrelated to the fence and his supposed riparian rights), and the Legislature intended that the decision would be final if no appeal was taken (see MCL 324.99903(13)). See *Dearborn Hts Sch Dist*, 233 Mich App at 129.

question of plaintiffs' claimed riparian rights in the wetland-pond was decided by the DEQ in its 2006 ruling. See *Monat*, 469 Mich at 682. As the ALJ noted, Mr. Holton's primary complaint in his 2004 DEQ action was that defendant's fence violated his riparian rights in the wetland pond:

> The gravaman of [Mr. Holton's] complaint is that, in some manner, the fence will impede his "water rights" and his ability to access the wetland on the [defendant's] property. He did not specify the precise nature of his perceived "water rights", but the fence could not conceivably impact free flow of water to his detriment. He also testified the fence will prevent him from accessing the wetland on the [defendant's] property. This concern is misplaced in that he has no right to access the wetland on private property and could not do so even if physically possible without trespassing. In fact, preventing such activity is the express purpose of the fence. *In his petition for contested case he characterized it as "[limiting] my right of riparian owner of public waters". Again, this assertion is misplaced as no public waters are involved.* [*In re Exemption issued to Sharon Bone*, DEQ Final Determination and Order (File Nos. 01-63-0108-P and 04-63-0053-P), issued October 16, 2006 (emphasis added) (alteration in original).]

As such, whether Mr. Holton possessed such "water rights" was an essential part of his 2004 DEQ action.[18] And the DEQ decided the matter, holding that Mr. Holton did not have riparian rights in the wetland-pond.

---

[18] Plaintiffs make much of the fact that the water level of the wetland-pond has risen since the DEQ's holding. This observation is inconsequential to the collateral estoppel determination. The basis of DEQ's holding— Mr. Holton's lack of riparian rights in the wetland-pond—is the same today as it was in 2006, and will remain so indefinitely, because the wetland-pond is an artificial waterway.

Accordingly, the trial court correctly concluded that plaintiffs' claim is barred by collateral estoppel and properly granted summary disposition in favor of defendant.[19]

### C. SANCTIONS[20]

"Awards of costs and attorney fees are recoverable only where specifically authorized by a statute, a court rule, or a recognized exception." *Keinz v Keinz*, 290 Mich App 137, 141; 799 NW2d 576 (2010) (citation and quotation marks omitted). "If a pleading is signed in violation of MCR 2.114(D), the party or attorney, or both, must be sanctioned." *Attorney General v Harkins*, 257 Mich App 564, 576; 669 NW2d 296 (2003). See also MCR 2.114(E). MCR 2.114(F) provides that "a party pleading a frivolous claim . . . is subject to costs as provided in MCR 2.625(A)(2)." In turn, MCR 2.625(A)(2) states, "[I]f the court finds . . . an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591." MCL 600.2591(1) mandates that, if a claim or defense is found to be frivolous, "the court . . . shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney." The statute

---

[19] Because the trial court correctly held that plaintiffs' claim was barred by collateral estoppel, we need not address defendant's argument that res judicata should also apply.

[20] This Court reviews a trial court's decision regarding the imposition of a sanction for clear error. *Schadewald v Brulé*, 225 Mich App 26, 41; 570 NW2d 788 (1997). "The trial court's decision is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been committed." *Id.* However, to the extent that our review requires interpretation of MCR 2.114 or MCL 600.2591, this Court reviews the issue de novo. See *Estes*, 481 Mich at 578-579.

defines "frivolous" to mean "that at least 1 of the following conditions is met":

> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.
>
> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.
>
> (*iii*) The party's legal position was devoid of arguable legal merit. [MCL 600.2591(3)(a).]

Plaintiff's position in this case—when viewed in light of the well-established common law that makes clear there are no riparian rights to artificial bodies of water and the DEQ's straightforward ruling that Mr. Holton had no riparian rights in the water in question—was devoid of arguable legal merit. By plaintiffs' own admission, the waterway in question is artificial—and plaintiffs knew of its artificial nature before they brought this suit. Plaintiffs also knew that the subject of this action—their alleged riparian rights in the wetland-pond—had already been adjudicated by the DEQ in 2006.[21] And certainly they and their lawyer had reason to know that the DEQ's determination was correct: the Michigan caselaw cited in plaintiffs' briefs clearly states that riparian rights do not attach to land abutting artificial waters. "Sanctions for bringing a frivolous action are warranted where the plaintiff, on the basis of a ruling in another case, has reason to believe that an action against the defendant lacks merit." *Farmers Ins Exch v Kurzmann*, 257 Mich App 412, 423; 668 NW2d 199 (2003), citing *Vermilya v Dunham*, 195 Mich App 79, 84; 489 NW2d 496 (1992).

When viewed in this light, this lawsuit is little more

---

[21] As noted, the artificial nature of the wetland-pond was also discussed by our Court in *Holton*, unpub op at 1.

than an attempt to void the DEQ's determination through other legal avenues—and also an effort to harass defendant, and perhaps wear her down, with yet another legal action. See MCL 600.2591(3)(a)(*i*). Defendant should not be placed in a position of having to spend money to defeat repeated frivolous suits or give up her valuable property rights to peaceful and exclusive possession of her property. Plaintiffs may not agree with defendant's right to exclude them from her property, but that is a right she is entitled to exercise. See *Nollan v Cal Coastal Comm*, 483 US 825, 831; 107 S Ct 3141; 97 L Ed 2d 677 (1987) ("[A]s to property reserved by its owner for private use, the right to exclude [others is] one of the most essential sticks in the bundle of rights that are commonly characterized as property.") (citations and quotation marks omitted) (second alteration in original).

Therefore, we hold that plaintiffs' lawsuit is frivolous, and reverse the trial court's ruling on this issue. We hold that defendant is entitled to attorney fees and costs for frivolous litigation and we remand to the trial court for a determination of appropriate sanctions pursuant to MCR 2.114 and MCL 600.2591.

### IV. CONCLUSION

We affirm the trial court's grant of summary disposition in favor of defendant, and reverse the trial court's denial of sanctions on plaintiffs. We remand to the trial court for the imposition of sanctions in an appropriate amount. We do not retain jurisdiction.

CAVANAGH and K. F. KELLY, JJ., concurred with SAAD, P.J.