# STATE OF MICHIGAN

# COURT OF APPEALS

LAKE ADRIAN DEVELOPERS, LLC,

Plaintiff-Appellant,

v

CITY OF ADRIAN and SAVOY ENERGY, LP,

Defendants-Appellees.

UNPUBLISHED
December 17, 2015

No. 322511
Lenawee Circuit Court
LC No. 13-004851-CH

Before: JANSEN, P.J., and CAVANAGH and GLEICHER, JJ.

PER CURIAM.

In this riparian rights case, plaintiff appeals as of right an order granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(8). We affirm.

This case arises from a dispute over plaintiff's putative riparian rights to the bottomlands of Lake Adrian, an artificial lake that was originally created by damming Wolf Creek, a natural watercourse. Defendant City of Adrian (City) dammed the creek to create a municipal water supply in 1941 and has exclusively maintained the resulting lake since that time. Defendant Savoy Energy, LP (Savoy) entered into an agreement with City to provide royalty payments to City in exchange for the rights to oil and gas exploration on numerous City-owned properties, including the Lake Adrian bottomlands. Plaintiff owns six lots along the shore of Lake Adrian. Plaintiff contends that it possesses riparian rights on Lake Adrian at common law and under Michigan's Inland Lakes and Streams Act (ILSA), MCL 281.951 *et seq.*, and that, accordingly, it should share in the royalty payments. The trial court disagreed, as do we.

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013). A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim. *Id*. at 131. A trial court must decide the motion based on the pleadings alone. *Id*. Further, the court must "accept as true all factual allegations supporting the claim, and any reasonable inferences or conclusions that might be drawn from those facts," *id*., and construe those factual allegations in a light most favorable to the nonmoving party, *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). However, the court need only accept as true the factual allegations supporting the claim, not a party's legal conclusions. *Davis v Detroit*, 269 Mich App 376, 379 n 1; 711 NW2d 462 (2005). A court may grant a motion under MCR 2.116(C)(8) "only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify

recovery." *Maiden*, 461 Mich at 119 (citation and quotation marks omitted). We also review de novo common-law claims, including those involving riparian rights. *Holton v Ward*, 303 Mich App 718, 725; 847 NW2d 1 (2014).

Riparian rights are "special rights to make use of water in a waterway adjoining the owner's property."[1] *Dyball v Lennox*, 260 Mich App 698, 705; 680 NW2d 522 (2003) (citation and quotation marks omitted). "Among other privileges, these rights include: the right to make natural and artificial use of the water in the watercourse; the right to construct and maintain a dock; and the right to use the entire surface of the watercourse for recreational purposes." *Holton*, 303 Mich App at 725-726 (internal references omitted). A landowner's "riparian rights to water-covered bottomlands are, other than the public's right of reasonable access to the water itself, indistinguishable from ordinary fee ownership of dry land." *Heeringa v Petroelje*, 279 Mich App 444, 451; 760 NW2d 538 (2008).

## I. COMMON-LAW CLAIMS

This Court has previously noted Michigan's straightforward rule regarding riparian rights:

> riparian rights attach to land that abuts or includes a natural watercourse—i.e., a 'natural stream of water fed from permanent or periodical natural sources and usually flowing in a particular direction in a defined channel, having a bed and banks or sides, and usually discharging itself into some other stream or body of water.' Riparian rights do not attach to land that abuts an artificial watercourse—i.e., 'waterways that owe their origin to acts of man, such as canals, drainage and irrigation ditches, aqueducts, flumes, and the like.' [*Holton*, 303 Mich App at 726 (citations omitted).]

Another panel of this Court stated it even more succinctly, holding that "it is clear under Michigan law that no riparian rights arise from an artificial body of water." *Persell v Wertz*, 287 Mich App 576, 579; 791 NW2d 494 (2010). Furthermore, "riparian rights are not alienable, severable, divisible or assignable apart from the land which includes therein, or is bounded by, a *natural* watercourse." *Thompson v Enz*, 379 Mich 667, 686; 154 NW2d 473 (1967) (emphasis added). This Court has noted with approval other states' rationales in withholding riparian rights from landowners whose property abuts an artificial watercourse: that it would be inequitable to grant riparian rights to an artificial watercourse when the watercourse exists solely because of another's labor. See *Holton*, 303 Mich App at 727-728.

Generally speaking, then, the common-law rule is that riparian rights simply do not attach to an artificial watercourse. *Persell*, 287 Mich App at 579. Michigan courts have followed this

---

[1] We note that the bottomlands at issue in this case are more properly classified as "littoral," because they abut or include a lake. See *Holton*, 303 Mich 721 n 1. Michigan courts have historically used the term "riparian" to refer to both rivers and lakes, however, and we will do likewise. See *id*.

general principle even when the artificial watercourse was a manmade canal connected to a natural lake, see *Thompson*, 379 Mich at 679-680, and when the plaintiffs argued that they had acquired riparian rights to a large manmade pond through prescription, see *Hudson v Village of Homer*, 351 Mich 73, 81-83; 87 NW2d 72 (1957). It is worth noting, as well, that the pond in *Hudson* was created by damming one fork of a river, and that some of the plaintiffs in the case owned property abutting the pond, lending the case a degree of factual similarity to the instant appeal. *Id*. at 76-77.

Given Michigan caselaw and the guiding principle behind it, we agree with the trial court that plaintiff did not possess riparian rights on Lake Adrian. Certainly, the lake is an artificial watercourse because it owed its "origin to acts of man." *Holton*, 303 Mich App at 726 (citation and quotation marks omitted). City dammed Wolf Creek to create a municipal water supply, and City alone was, and continues to be, responsible for its maintenance. Accordingly, under the rulings in *Thompson* and *Hudson*, as well as *Holton*, 303 Mich App at 727-728, the fact that Lake Adrian was created by damming a natural watercourse does not exempt the case from the general rule. City bought or acquired all of the property abutting Wolf Creek before damming its flow, and plaintiff only bought property after Lake Adrian—an artificial lake—was created. Accordingly, we agree with the trial court that the general rule—that riparian rights simply do not attach to an artificial watercourse—applies here. See *Persell*, 287 Mich App at 579.

Plaintiff argued below, and continues to argue on appeal, that this Court's holding in *Holton* left open the very question at issue in this case and, in so doing, created a rule by negative implication wherein riparian rights attach to an artificial watercourse that was created by modifying a natural watercourse. The language upon which plaintiff relies is as follows:

> Plaintiffs have made no allegations that the common owner dammed a natural watercourse, nor is there any evidence to suggest that he did. In fact, it appears that the original wetland dredged and dammed by the common owner merely served as a collection point for surface waters . . . . Surface waters do not give rise to riparian rights: said rights only attach to land that abuts a natural watercourse. . . . . If the original wetland modified by the common owner was not a 'natural watercourse,' it is impossible for plaintiffs to have any riparian rights in the (artificial) pond and deeper wetland created by the common owner's actions. [*Holton*, 303 Mich App at 728-729 (citations and quotation marks omitted).]

Plaintiff, however, misconstrues this portion of the *Holton* opinion. According to plaintiff, the above-quoted passage suggests that riparian rights could attach to any artificial watercourse at any point in time, so long as it was not composed of surface water and had been created by modifying a natural watercourse. Instead, the *Holton* Court was posing a theoretical situation in which a common owner of a natural watercourse modified or deepened that watercourse, possibly creating riparian rights for another common owner in the resulting larger, deeper artificial watercourse—a situation which the *Holton* Court chose not to address because it did not coincide with the facts of the case. But this theoretical scenario does not avail plaintiff. Admittedly, City modified a natural watercourse, but plaintiff was never a common owner of the preexisting natural watercourse, Wolf Creek. We further note that the Michigan Supreme Court denied leave to appeal *Holton* earlier this year because it was "not persuaded that the questions presented should be reviewed by this Court." *Holton v Ward*, 497 Mich 980; 861 NW2d 20

(2015). Consequently, despite the quoted language, and in the absence of a situation corresponding to the theoretical one that the *Holton* Court raised, there is no "open question" regarding whether riparian rights attach to an artificial watercourse that was created by damming a natural one.

Finally, plaintiff contends that it acquired riparian rights through adverse possession. "[A] plaintiff must provide clear and cogent proof that possession has been actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of fifteen years" to establish a claim of adverse possession. *Canjar v Cole*, 283 Mich App 723, 731; 770 NW2d 449 (2009) (citation and quotation marks omitted). The plaintiff must also show that his or her "actions were hostile and under claim of right, meaning that the use is inconsistent with the right of the owner, without permission asked or given, and which use would entitle the owner to a cause of action against the intruder." *Id*. at 731-732 (citation and quotation marks omitted).

Assuming that riparian rights could be acquired to an artificial watercourse through adverse possession, plaintiff still fails to establish its claim. Plaintiff's use of Lake Adrian was not exclusive. City allowed anyone to use the lake, subject to certain restrictions such as a boating speed limit. Plaintiff's use was also not hostile or under claim of right because City gave its implicit permission and because plaintiff's use was not inconsistent with City's rights. See *id*.

## II. STATUTORY CLAIMS

Plaintiff next contends that the ILSA afforded it riparian rights in Lake Adrian. The ILSA has been recodified as Part 301 of the Natural Resources and Environmental Protection Act (NREPA). *Holton*, 303 Mich App at 730 n 15. Under the NREPA, MCL 324.30101(i) defines an "inland lake" as

> a natural or artificial lake, pond, or impoundment; a river, stream, or creek which may or may not be serving as a drain as defined by the drain code of 1956, 1956 PA 40, MCL 280.1 to 280.630; or any other body of water that has definite banks, a bed, and visible evidence of a continued flow or continued occurrence of water, including the St. Marys, St. Clair, and Detroit rivers. Inland lake or stream does not include the Great Lakes, Lake St. Clair, or a lake or pond that has a surface area of less than 5 acres.

MCL 324.30101(r) defines a "riparian owner" as "a person who has riparian rights," and MCL 324.30101(s) provides that "riparian rights" are "those rights which are associated with the ownership of the bank or shore of an inland lake or stream."

Plaintiff argues that, in spite of its artificial nature, Lake Adrian is an inland lake under MCL 324.30101(i) because its surface area is greater than five acres. In turn, plaintiff asserts that it has riparian rights in Lake Adrian under MCL 324.30101(s) because it owns the shore of an inland lake. The plaintiff in *Holton* asserted the same argument, i.e., that the ILSA granted him riparian rights to an artificial watercourse because it qualified as an inland lake by definition. *Holton*, 303 Mich App at 729. This Court dismissed the plaintiff's contentions, holding that "the statute does not grant or enlarge riparian rights—it simply defines those terms as generally understood." *Id*. at 730. The Court went on, noting: "The use of 'has' indicates that MCL

-4-

324.30101(r) refers to landowners who *already* possess riparian rights—it does not extend riparian rights to new groups of property holders." *Id*. (emphasis added).  The Court additionally remarked that "the statute nowhere mentions that it abrogates the common law, nor does it evince intent to do so." *Id*.

This Court's holding in *Holton* controls here.  Lake Adrian may indeed be an inland lake for purposes of Part 301 of the NREPA, but MCL 324.30101 does not confer riparian rights where none previously existed, and the statute does not abrogate or transcend the general common-law rule discussed above.  Accordingly, the trial court did not err in granting summary disposition in favor of defendants because no factual development could possibly justify plaintiff's recovery.  See *Maiden*, 461 Mich at 119.

Affirmed.


/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Elizabeth L. Gleicher