# STATE OF MICHIGAN

# COURT OF APPEALS

RKA PETROLEUM COMPANIES, INC.,

        Plaintiff-Appellant,

v

JOSEPH KRATOCHVIL and ATLAS OIL
COMPANY,

        Defendants-Appellees.

UNPUBLISHED
April 14, 2016

No.  324172
Wayne Circuit Court
LC No.  13-000728-CK

Before: GLEICHER, P.J., and JANSEN and SHAPIRO, JJ.

JANSEN, J. (*concurring in part and dissenting in part*).

I concur with the majority's conclusion that summary disposition was proper with regard to plaintiff's tortious interference claim against Atlas Oil Company (Atlas). However, I disagree with the majority's conclusion that there exists a genuine issue of material fact with regard to whether defendant Joseph Kratochvil breached the nonsolicitation agreement with plaintiff.

A party claiming breach of contract must show "(1) that there was a contract, (2) that the other party breached the contract, and (3) that the party asserting breach of contract suffered damages as a result of the breach." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 601; 865 NW2d 915 (2014). With regard to damages, "[t]he measure of damages in relation to a breach of contract is the pecuniary value of the benefits the aggrieved party would have received if the contract had not been breached." *Id*. (citation and quotation marks omitted). " 'The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach.' " *Id*. (citation omitted). The damages may not be conjectural or speculative. *Id*. at 602.

I believe that plaintiff failed to present evidence showing that Kratochvil directly or indirectly hired or solicited Laurie Lamphear, or encouraged Lamphear to leave plaintiff's employ. As noted by the majority, Kratochvil did not begin working for Atlas until November 5, 2012, which was three days *after* Lamphear was interviewed and approximately one month after Sara Crooks began soliciting Lamphear to work at Atlas. Lamphear testified that she did not remember having any conversations with Kratochvil during the time she was in meetings and having conversations with Atlas employees. In fact, Lamphear was surprised to see Kratochvil's name on her offer letter since she did not interview with him and had not spoken with him during

-1-

the interview process. Thus, it is clear that Lamphear and Kratochvil did not have any direct contact before Lamphear accepted employment with Atlas.

With regard to the actions Kratochvil took, Kratochvil signed an internal offer letter request form, signed the written offer letter, and called Lamphear on the telephone to give her a welcome aboard message. However, these actions did not constitute direct or indirect solicitation or encouragement to leave plaintiff's employ since Lamphear testified that she received the offer letter and telephone call *after* she decided to work for Atlas and communicated her acceptance. Therefore, I disagree with the majority's conclusion that the offer letter inspired Lamphear to join Kratochvil's team as Lamphear had already made the decision to leave plaintiff's employ by the time she saw the letter. Furthermore, the evidence indicates that Kratochvil took these actions as a mere formality and that Lamphear would in fact be working under other employees of Atlas. There is no evidence that Kratochvil took part in formulating the offer. Kratochvil testified that he was merely notified regarding the recommendation to hire Lamphear, and Crooks testified that Kratochvil "had minimal, if nothing, to do with the interviewing or the offer letter." Thus, the fact that Kratochvil signed both documents and gave Lamphear a "welcome aboard" message on the telephone after Lamphear had already accepted employment did not constitute solicitation or encouragement to leave plaintiff's employ. Kratochvil and Lamphear also had a telephone conversation after Lamphear rescinded her acceptance of Atlas's employment offer, but neither Kratochvil nor Lamphear recalled the specifics of the telephone conversation. Therefore, I disagree with the majority's conclusion that Kratochvil encouraged Lamphear to reconsider her decision to rescind her acceptance.

Plaintiff also presented evidence indicating Kratochvil's behind the scenes participation with regard to Lamphear's employment at Atlas. Plaintiff presented an e-mail from Crooks to Kirk Haggarty, in which Crooks stated that she met with Dan Ravid and Kratochvil, and the three of them discussed the objectives, structure, logistical requirements, and progress tracking for Lamphear's position. Plaintiff also presented an e-mail in which Kratochvil agreed to help complete an IT user request form and a training schedule for Lamphear after she accepted employment. The e-mails do not specify what decisions Kratochvil in particular made with regard to the structure of Lamphear's employment. There is no indication that Lamphear knew about Kratochvil's participation in structuring her position or that his participation influenced her decision in any way. Thus, although the e-mails indicate that Kratochvil aided Ravid and Crooks in structuring the details of Lamphear's position, Kratochvil's actions did not constitute solicitation or encouragement for Lamphear to leave plaintiff since Kratochvil's actions were not designed to get Lamphear to switch jobs, and there is no indication that Lamphear was aware of Kratochvil's role in designing her job.

Plaintiff also failed to present evidence that Kratochvil directly or indirectly *hired* Lamphear. Although Kratochvil's name appeared on the offer letter, a review of the record in this case reveals that Crooks, Haggarty, and Sam Simon made the decision to hire Lamphear. While Crooks was involved in the solicitation process from the outset, an e-mail from a woman named Laila Powers to Crooks and Haggarty refers to the fact that Haggarty had to approve the offer letter, and an e-mail from Simon to Haggarty gives approval to hire Lamphear. There is no indication in the record that Kratochvil had any authority to hire Lamphear, and he only signed the offer letter as a formality because he was the director of the department in which Lamphear would work. Indeed, Lamphear accepted employment with Atlas before receiving the offer

letter. Thus, Kratochvil did not directly or indirectly hire Lamphear in violation of his nonsolicitation agreement. Accordingly, I do not believe that plaintiff presented evidence establishing a genuine issue of material fact with regard to whether Kratochvil breached the nonsolicitation agreement.

Furthermore, even assuming that plaintiff could show that Kratochvil breached the nonsolicitation agreement, plaintiff did not present evidence establishing that it suffered damages because of the breach. In its responses to defendants' request to admit with follow-up interrogatories and request for production of documents, plaintiff indicated that its damages included $50,000 in attorney fees and $52,000 to retain Lamphear for two years. However, plaintiff is not entitled to damages on either ground. " 'Awards of costs and attorney fees are recoverable only where specifically authorized by a statute, a court rule, or a recognized exception.' " *Holton v Ward*, 303 Mich App 718, 734; 847 NW2d 1 (2014) (citation omitted). Plaintiff failed to specify which statute, court rule, or recognized exception entitles it to an award of attorney fees. See *id*.

Plaintiff also did not establish that it is entitled to damages with regard to the costs to retain Lamphear. Lamphear never left plaintiff's employ. Although plaintiff increased Lamphear's salary by $25,000 after she informed her supervisor that she was leaving, Lamphear testified that the increase in her salary was immaterial to her decision, and she communicated this to her supervisor. Contrary to the majority's assertion, Lamphear's deposition testimony was the only evidence in the record regarding the increase in her salary, and Lamphear's testimony was not contradicted by any other evidence in the record. Thus, plaintiff failed to present evidence that Kratochvil's actions caused plaintiff to incur damages with regard to the increase in Lamphear's salary since Lamphear communicated to plaintiff that the increase in her salary was immaterial to her decision. Therefore, the trial court properly granted summary disposition in favor of Kratochvil. See *New Freedom Mtg Corp v Globe Mtg Corp*, 281 Mich App 63, 69-70; 761 NW2d 832 (2008) ("[I]f there are no damages, it is appropriate to grant summary disposition on fraud, misrepresentation, *breach of contract*, and negligence claims.") (emphasis added). Accordingly, I would affirm the trial court's order granting summary disposition in favor of defendants.

/s/ Kathleen Jansen