*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CAROL J. LOCKHART REVOCABLE TRUST, by
MICHELLE P. BIDDINGER, Successor Trustee,

      Plaintiff/Counterdefendant,

and

CALVIN W. LOCKHART LIVING TRUST, by
CALVIN LOCKHART, Trustee, and CALVIN
LOCKHART, Individually,

      Intervening
      Plaintiffs/Counterdefendants-
      Appellants,

v

PARAMOUNT ENTERPRISES LAND, LLC,
PARAMOUNT ENTERPRIZES DAIRY, LLC, and
HEMPHILL FAMILY LIABILITY COMPANY, as
Successor and Assign to PARAMOUNT
ENTERPRISES LAND, LLC,

      Defendants/Counterplaintiffs-
      Appellees.

UNPUBLISHED
May 19, 2022

No. 356306
Tuscola Circuit Court
LC No. 17-029825-CK

Before: BORRELLO, P.J., and SHAPIRO and HOOD, JJ.

PER CURIAM.

In this action involving defendant/counterplaintiff Paramount Enterprises Land, LLC's (PEL), use of water from a pond located partially on property owned by intervening plaintiffs, the trial court determined that PEL established a prescriptive easement to use the water and entitlement to damages arising from intervening plaintiffs' interference with the easement. Intervening plaintiffs appeal as of right the trial court's judgment awarding damages in favor of PEL and Paramount Enterprizes Dairy, LLC (PED) (collectively, Paramount defendants). We affirm the

trial court's order finding a prescriptive easement in favor of PEL, but vacate the award of damages.

## I. BACKGROUND

The Lockhart family has owned property in Fremont Township for several generations. A portion of the property was formerly used for gravel mining. The resulting pit filled with water after the gravel mining ceased, creating a pond. The pond measures approximately 394,500 square feet and reaches a maximum depth of approximately 27 feet. In 1977, a portion of the Lockhart property, including approximately 61,400 square feet of the pond and land fronting the pond, was conveyed to Calvin and his wife by Calvin's parents, Walter and Carol. Later, in June 1986, Calvin's parents granted an easement to their neighbors, Cecil Wallace and Pauline Wallace, allowing them to use the pond for irrigation purposes.

Although a complete chain of title for the respective properties was not produced below, the parties do not appear to dispute that, at the beginning of the case, the farming property formerly owned by the Wallaces was owned by PEL. The property Calvin acquired in 1977 was owned either by Calvin or his trust, and the remaining portion of the original Lockhart property was owned by plaintiff, the Carol J. Lockhart Revocable Trust.

Intervening plaintiffs' verified complaint in this action alleged that PEL's irrigation practices lowered the water level in the pond, resulting in erosion of the portion of their land that abutted the pond. Intervening plaintiffs further alleged that PEL did not have their permission to draw water from the pond in disregard of their property rights. In September 2018, intervening plaintiffs obtained a temporary restraining order enjoining PEL from drawing water from the pond until further order of the court. PEL filed a counterclaim indicating that it and its predecessors had continually exercised the right to use the pond water since the written easement was granted in 1986, thereby establishing a prescriptive easement with respect to intervening plaintiffs' property.

Evidence was presented at several hearings. At an August 12, 2019 hearing on PEL's motion to terminate the temporary restraining order or require bond, Brent Robinson, the sole member of PEL, testified about the effect of the restraining order on his farm. Specifically, he testified that he had leased the property to Laracha Farms to plant sugar beets and that he was responsible to provide the water. Since the temporary restraining order was entered, he had to arrange a new irrigation system for the property using well water at a reduced gallons-per-minute rate. The new system allowed him to water the sugar beets, but "at an existence level." That is, the beets were staying alive, but were not properly growing. Calvin testified and disputed Robinson's testimony that the beets were struggling. The parties agreed at the conclusion of this testimony to allow PEL to temporarily use a limited amount of the pond water, thereby making it unnecessary for the trial court to decide the motion.

The claims between plaintiff and PEL settled before the October 15, 2019 bench trial. Robinson testified at trial that he sustained damages to the sugar beet crop because of the restraining order, but would not know the extent of the damages until the crop was harvested. On the basis of testimony and evidence presented at several hearings and the bench trial, the trial court found (1) no cause of action as to intervening plaintiffs' claim against PEL and (2) that PEL was

entitled to a prescriptive easement and damages for intervening plaintiffs' interference with said easement.

The first evidentiary hearings regarding damages was held in January 2020. In a bench brief, intervening plaintiffs questioned the basis for PEL's damages considering that 2019 ended up being a "bumper year" for sugar beets. At the hearing, Robinson testified that he entered a sublease for the property with Laracha Farms in an attempt to mitigate the damages he would incur from the interference with his water supply during the pendency of this case. A review of the sublease demonstrated that the contract actually existed between Laracha Farms and PED. Robinson testified that PEL was a land holding company, PED was the operations company, and he was the sole member of both entities. Robinson explained that he executed the lease in March 2019, after it was determined that the temporary restraining order would not be lifted before the 2019 crop season, leaving him unable to grow corn on the land as he had planned. Robinson prepared summaries of damages for the 2019 and 2020 crop years resulting from the inability to grow corn and the loss of government funds from Laracha Farm being the entity farming the land. The summaries are titled, "Paramount Enterprises Loss Of Income Due to Injunction sought and received by Calvin Lockhart." Intervening plaintiffs objected to these exhibits because they had not been disclosed or produced earlier, and the trial court decided to adjourn the matter and extend the time for the parties to file witness and exhibit lists.

In March 2020, PEL filed a motion asking the trial court to quash intervening plaintiffs' subpoena requesting certain company records for both PED and PEL. PEL argued that the subpoena should be quashed because discovery had been completed and the requests were beyond the scope of permissible discovery. In response, intervening plaintiffs argued that PEL's preliminary proofs regarding damages arising from its inability to plant corn were at odds with its previous theory of damages, i.e., that the inadequate water supply caused damage to the sugar beet crop being grown by Laracha Farms. Intervening plaintiffs maintained that PEL's sudden change in its theory of damages necessitated review of the subpoenaed documents in order to defend against the new theory. The trial court granted PEL's motion to quash the subpoena, reasoning that the time for discovery had passed and that the purpose of the earlier adjournment was only to allow intervening plaintiffs to review the documents upon which PEL planned to rely at the damages hearing.

When the evidentiary hearing resumed in January 2021, Robinson presented testimony regarding the damages sustained by "Paramount Enterprises" as a result of this litigation. After Robinson's testimony, PEL moved to "have the record name of Paramount Enterprises Land, LLC, conform to the proofs, which would also include Paramount Enterpri[z]es Dairy, LLC." Intervening plaintiffs objected, arguing that PEL and PED were separate entities that should be treated separately. The trial court granted the motion to amend the record. It acknowledged that the intervening complaint and counterclaim both referred to PEL, but reasoned that "it is a closely held corporation, the LLC is basically Mr. Robinson because he's the sole member." The court deemed it appropriate to "conform with the proofs which have been presented from the very beginning." The court then entered a judgment in favor of Paramount defendants in the amount of $176,200.28, consistent with the summaries of losses prepared by Robinson. This appeal followed.

## II. JURISDICTION

As a preliminary matter, we must first address Paramount defendants' contention that this Court lacks jurisdiction to consider intervening plaintiffs' challenge regarding the trial court's grant of a prescriptive easement.[1]

This Court "has jurisdiction on appeals from all final judgment and final orders from the circuit court, court of claims, and probate court, as those terms are defined by law and supreme court rule[.]" MCL 600.308(1). MCR 7.203(A)(1) likewise specifies that this Court has jurisdiction over an appeal of right from a final judgment or final order of the circuit court, subject to exceptions inapplicable in this case. In pertinent part, MCR 7.202(6)(a)(i) defines a final judgment or final order in a civil case as including "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties . . . ."

Following the bench trial, the trial court entered an opinion and order finding no cause of action with respect to intervening plaintiffs' claim and that PEL was entitled to a prescriptive easement and damages. The issue of damages, however, was explicitly reserved for decision on a later date. After additional proofs were presented, the trial court determined PEL's damages, amended the pleadings to conform to the proofs by including PED as a defendant/counterplaintiff, and entered judgment against intervening plaintiffs on January 26, 2021. This was the first judgment or order that disposed of all the claims and adjudicate the rights and liabilities of all the parties. In other words, it was a final order for purposes of this Court's jurisdiction.

Thereafter, intervening plaintiffs filed their timely claim of appeal on February 16, 2021. See MCR 7.204(A)(1) (requiring an appeal of right in a civil case to be filed within 21 days of the order appealed). Having perfected their claim of appeal, intervening plaintiffs were free to "raise on appeal all issues related to other orders entered in the case." *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 500 n 1; 730 NW2d 481 (2007). Paramount defendants' jurisdictional challenge, therefore, lacks merit.

## III. PRESCRIPTIVE EASEMENT

Intervening plaintiffs argue on appeal that the trial court erred by finding a prescriptive easement in favor of PEL. We disagree.[2]

---

[1] "Whether this Court had jurisdiction to hear an appeal is always within the scope of this Court's review." *Chen v Wayne State Univ*, 284 Mich App 172, 191; 771 NW2d 820 (2009). We review de novo challenges to this Court's jurisdiction. *Id*.

[2] We review do novo the trial court's decision regarding the existence of a prescriptive easement. *Mulcahy v Verhines*, 276 Mich App 693, 698; 742 NW2d 393 (2007). Questions of statutory interpretation are likewise reviewed de novo. *Riverview v Sibley Limestone*, 270 Mich App 627, 630; 716 NW2d 615 (2006). The trial court's factual findings are reviewed for clear error. *Bayberry Group, Inc v Crystal Beach Condo Ass'n*, 334 Mich App 385, 392; 964 NW2d 846 (2020). "A finding is clearly erroneous where, after reviewing the entire record, this Court is left

"An easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years." *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 679; 619 NW2d 725 (2000). See also *Matthews v Natural Resources Dep't*, 288 Mich App 23, 37; 792 NW2d 40 (2010) ("A prescriptive easement requires elements similar to adverse possession, except exclusivity.").

Intervening plaintiffs have consistently relied on *Holton v Ward*, 303 Mich App 718; 847 NW2d 1 (2014), to support their position that they are entitled to bar PEL's use of the pond water. In that case, the plaintiffs and the defendant owned adjacent parcels of land, with an artificial pond situated partially on each of the parcels. *Id*. at 720-721. This Court determined that the plaintiffs did not have a right to access the portion of the pond situated on the defendant's property. *Id*. at 721. In reaching this result, we held that common law riparian rights do not attach to an artificial body of water. See *id*. at 725-731. We observed that the rule against riparian rights in connection with artificial bodies of water stemmed from "the most ancient property right: the right to exclude." *Id*. at 727.

Intervening plaintiffs maintain that *Holton* supports their position that they, too, had a right to exclude PEL from using water from their portion of the pond. However, PEL's claim of entitlement to use the pond water did not rest on riparian rights, nor could it ever assert such a claim when its property does not abut or include the pond. Rather, PEL claimed a right to use the water on the basis of a prescriptive easement—a theory that, if successfully established, overcomes a landowner's right to exclude the easement holder. Accordingly, the trial court correctly rejected *Holton* as controlling authority in this case.

Intervening plaintiffs next argue that the trial court erred by granting a prescriptive easement because PEL's use of the pond water was essentially permissive and therefore not adverse. "Adverse or hostile use is use that is inconsistent with the right of the owner, without permission asked or given, that would entitle the owner to a cause of action against the intruder for trespassing" or other interference with an interest in property. *Plymouth Canton Community Crier, Inc*, 242 Mich App at 681 (quotation marks and citation omitted). "[P]ermissive use of property, regardless of the length of the use, will not result in an easement by prescription." *West Mich Dock & Market Corp v Lakeland Investments*, 210 Mich App 505, 511; 534 NW2d 212 (1995).

Intervening plaintiffs reason that because Calvin—in his role as beneficiary of the Carol J. Lockhart Revocable Trust—negotiated with Robinson regarding the amount of annual payments to plaintiff under the written easement, this Court can infer that he was giving PEL permission to use *his* pond water, even if he did not realize he had rights distinct from plaintiff's rights. We disagree. The inference intervening plaintiffs urge us to apply is at odds with Calvin's explicit testimony indicating that he never gave permission for PEL or their predecessors to withdraw water from the pond. Further, the written easement did not involve the property owned by

---

with a definite and firm conviction that a mistake has been made." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003).

intervening plaintiffs. Thus, any statements made by Calvin while negotiating with Robinson on behalf of his mother's trust cannot be imputed to intervening plaintiffs.

Notably, intervening plaintiffs do not challenge any other elements of PEL's prescriptive easement. Instead, their final argument regarding the propriety of the prescriptive easement is that it violates the Inland Lakes and Stream Act.[3] Paramount defendants do not appear to dispute that the pond is an "inland lake or stream" as that term is defined by statute.[4] Pursuant to MCL 324.30102(1)(d), a person without a permit from the department of environmental quality may not "[c]reate, enlarge, or diminish an inland lake or stream." Intervening plaintiffs assert that the prescriptive easement violates this provision because PEL's use of the pond water for irrigation diminishes the pond. Paramount defendants counter that the prescriptive easement does not violate the act because MCL 324.30103 provides that no permit is required for "water withdrawal," MCL 324.30103(1)(k), which is defined as "the removal of water from its source for any purpose," MCL 324.30103(2).

Intervening plaintiff's interpretation would create a conflict between the two statutes as it requires us to construe the removal of any amount of water as causing the lake to be "diminish[ed]." We therefore reject that reading and conclude that defendant's use of water from the lake does not "diminish" it because the evidence demonstrated that any lowering of the water level that occurs because of PEL's irrigation is temporary—the pond water eventually regenerates and returns to its natural level. Thus, while PEL's irrigation sometimes reduces the water level, it does not diminish the pond by lessening its size. The trial court's order granting a prescriptive easement in PEL's favor does not violate MCL 324.30102(1)(d).

IV. AMENDMENT TO JOIN PED AS A DEFENDANT/COUNTERPLAINTIFF

---

[3] The Inland Lakes and Stream Act, MCL 281.951 *et seq*., was repealed by 1995 PA 59 and replaced by provisions of the Natural Resources and Environmental Protection Act, MCL 324.101 *et seq*.

[4] MCL 324.30101(i) defines an inland lake or stream as meaning either of the following:

(*i*) An artificial or natural lake, pond, or impoundment that is a water of the United States as that term is used in section 502(7) of the federal water pollution control act, 33 USC 1362.

(*ii*) A natural or artificial lake, pond, or impoundment; a river, stream, or creek which may or may not be serving as a drain as defined by the drain code of 1956, 1956 PA 40, MCL 280.1 to 280.630; or any other body of water that has definite banks, a bed, and visible evidence of a continued flow or continued occurrence of water, including the St. Marys, St. Clair, and Detroit Rivers.

Intervening plaintiffs next argue that the trial court abused its discretion by allowing PEL to amend the pleadings to add PED as a defendant/counterplaintiff. We agree.[5]

In granting PEL's motion to amend the record to include PED as a defendant/counterplaintiff, the trial court did not specify the authority it relied upon to permit the amendment, but its reasoning—that the amendment would conform to the proofs presented from the beginning of the case—suggests that it permitted the amendment under MCR 2.118(C). That rule provides:

> (1) When issues not raised by the pleadings are tried by express or implied consent of the parties, they are treated as if they had been raised by the pleadings. In that case, amendment of the pleadings to conform to the evidence and to raise those issues may be made on motion of a party at any time, even after judgment.

> (2) If evidence is objected to at trial on the ground that it is not within the issues raised by the pleadings, amendment to conform to that proof shall not be allowed unless the party seeking to amend satisfies the court that the amendment and the admission of the evidence would not prejudice the objecting party in maintaining his or her action or defense on the merits. The court may grant an adjournment to enable the objecting party to meet the evidence. [MCR 2.118(C).]

The Supreme Court has recognized a "distinction between the strict requirements for amendment at trial of MCR 2.118(C)(2) and the free amendment rule of MCR 2.118(A)(2)." *Weymers v Khera*, 454 Mich 639, 660 n 26; 563 NW2d 647 (1997).

MCR 2.118(C)(1) is inapplicable because PED's inclusion as a defendant/counterplaintiff was not expressly or impliedly agreed to by the parties—intervening plaintiffs explicitly objected to Robinson's testimony disregarding the formal distinctions between his entities and the proposal to amend the pleadings to include PED as party. And MCR 2.118(C)(2) is also of questionable application since it speaks to the admissibility of evidence rather than the inclusion of a new party.

We conclude that the trial court erred by viewing the addition of PED as a party as a mere technicality because Robinson was the sole member of both PED and PEL. The misnomer doctrine allows amendment to "correct inconsequential deficiencies or technicalities in the naming of parties, for example, where the right corporation has been sued by the wrong name, and service has been made upon the right party, although by a wrong name . . . ." *Miller v Chapman Contracting*, 477 Mich 102, 104; 730 NW2d 462 (2007) (quotation marks and citation omitted). But when the plaintiff attempts to "substitute or add a wholly new and different party to the proceedings," the misnomer doctrine is inapplicable. *Id.* at 107.

Intervening plaintiffs are correct that PED and PEL are distinct entities that cannot be treated as interchangeable merely because they have common ownership. See *Salem Springs,*

---

[5] This Court reviews a trial court's ruling regarding a motion to amend for an abuse of discretion. *Wolfenbarger v Wright*, 336 Mich App 1, 14; 969 NW2d 518 (2021). "A court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes." *Id.*

*LLC v Salem Twp*, 312 Mich App 210, 222-223; 880 NW2d 793 (2015) (explaining that corporate form rules, including treatment of related corporations as separate legal entities, apply to limited-liability companies). Thus, amending the pleadings to add PED as a defendant/counterplaintiff added an entirely new and different party to the case and was therefore was not permitted under the misnomer doctrine. We also decline to characterize the addition of PED as a mere technicality particularly when intervening plaintiffs did not have notice of the damages related to PED until the evidentiary hearing and were denied discovery thereafter. PEL's counterclaim merely alleged damages pertaining to the "loss of value of property purchased as irrigated property and lost yield of crops from having lost its source of water for irrigation . . . ." Before the bench trial, there was no mention of PED, an operations company distinct from PEL, or losses incurred because of the inability to plant corn. And at the bench trial, Robinson's testimony regarding damages pertained only to the sugar beets that were allegedly being affected by the reduced water. Accordingly, intervening plaintiffs did not have notice to conduct discovery of damages relating to PED, and when they sought to do so after the evidentiary hearing was adjourned, the trial court quashed the subpoena. In short, intervening plaintiffs were denied a meaningful opportunity to defend against damages associated with PED and were therefore prejudiced by the amendment to the pleadings at this late stage of litigation. See *Ben P Fyke & Sons v Gunter Co*, 390 Mich 649, 658; 213 NW2d 134 (1973) ("The litigation may proceed to a point where the opposing party cannot reasonably be expected to defend against the amendment; this is an especially pertinent factor on the eve of, during, or after trial."). Under these circumstances, the trial court abused its discretion by allowing PEL to amend the pleadings to include PED as a defendant/counterplaintiff.

V. DAMAGES

Lastly, intervening plaintiffs challenge the trial court's award of damages in favor of Paramount defendants. We agree that the trial court's damages award was tainted by its error in allowing the pleadings to be amended to include PED as a party in this case.[6]

"A plaintiff asserting a cause of action has the burden of proving damages with reasonable certainty, and damages predicated on speculation and conjecture are not recoverable." *Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 96; 706 NW2d 843 (2005). An award of damages will not be rejected as unduly speculative if a reasonable basis for the computation exists. *Id*.

Robinson testified that his computation of damages encompassed both of his companies. However, it seems clear that PED is the proper party with respect to the damages arising from the temporarily reduced water availability. Again, PED is the operations company, while PEL is merely the land holding company. It was PED rather than PEL that executed the leases with Laracha Farms to mitigate the losses. And PEL's motion to add PED as a party in order to conform

---

[6] "This Court reviews the trial court's determination of damages following a bench trial for clear error." *Alan Custom Homes*, 256 Mich App at 513. "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Id*. at 512.

to the proofs after Robinson's testimony was seemingly a tacit admission that PED is the party that suffered damages.

In any event, we agree that the trial court's award of damages is speculative because there is no basis in the record evidence to identify the amount of damages sustained by PEL alone. Given our conclusion that PED was not properly joined in this action, we are definitely and firmly convinced that the trial court erred by awarding damages sustained, at least in part, by PED. Accordingly, we vacate the award of damages.[7]

## VI. CONCLUSION

We affirm the trial court's order finding a prescriptive easement in favor of PEL, but vacate the trial court's judgment awarding damages and remand for further proceedings as necessary, and consistent with this opinion. No costs are awarded, neither party prevailing in full. MCR 7.219(A). We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro
/s/ Noah P. Hood

---

[7] We express no opinion on the viability of PED bringing a new suit to recover its damages. We note, however, that no party has yet to raise the issue of whether damages can be recovered for a wrongfully entered injunction in the absence of a bond.